STATE OF NORTH CAROLINA v. THOMAS CARR

No. 8114SC336

(Filed 20 October 1981)

**1. Criminal Law § 111.1— references to indictment during remarks and charge to jury**

   N.C.G.S. 15A-1221(b) does not prevent the judge from making references to the bill of indictment during remarks or the charge to the jurors. The statute proscribes the *reading* of the indictment to the prospective jurors or the jury.

**2. Criminal Law § 71— "large amount of money"—shorthand statement of fact**

   A witness's testimony that the day after the robbery defendant had an unusual or large amount of money was admissible as a shorthand statement of fact derived from the witness's own experience and was relevant as a foundation for a series of questions concerning defendant's reaction to the witness's inquiry about the money.

**3. Conspiracy § 5.1; Criminal Law § 79— conspiracy—declaration of coconspirators**

   A statement by one of the robbers that he was going to pick up defendant at the airport was competent as a statement of a coconspirator made in furtherance of the plan to commit the robbery even though defendant was not formally charged with criminal conspiracy.

**4. Jury § 9— replacement of juror with alternate**

   There was no abuse of discretion in replacing a juror with an alternate juror upon an explained absence of the original juror.

APPEAL by defendant from *McLelland, Judge.* Judgment entered 6 November 1980 in Superior Court, DURHAM County. Heard in the Court of Appeals 23 September 1981.

Defendant was tried and convicted on a lawful bill of indictment charging him with armed robbery.

The state's evidence indicated that on 19 January 1980 George Ferrell, assistant manager of Byrd's Low Mart in Durham, took a money bag from the store to a night deposit box at Planter's National Bank. The bag contained over $9,000. At the bank two men demanded the money bag. One man pointed a pistol at Ferrell; the other was armed with a rifle. Under this threat, Ferrell gave up the bag to the men, and one of them also took his wallet. Michael Anthony Brown testified that he was involved in the robbery, that defendant was one of the men who

robbed Ferrell, and that defendant was armed with a .32-caliber pistol. After the robbery, defendant split the money between the participants. Defendant was later arrested and identified as one of the robbers.

*Attorney General Edmisten, by Special Deputy Attorney General Isham B. Hudson, Jr., for the State.*

*Loflin & Loflin, by Thomas F. Loflin, III, for defendant appellant.*

MARTIN (Harry C.), Judge.

[1]  Defendant first contends the court erred in reading a part of the bill of indictment to the jury, contrary to N.C.G.S. 15A-1221(b). This statute proscribes the *reading* of the bill of indictment to the prospective jurors or the jury. The record does not disclose that the trial judge read the bill to the jurors at any time. He made reference to the contents of the bill during his remarks to the jurors while they were being selected and during his charge. Defendant did not object to the remarks at jury selection and thereby waived any possible defect. Leaving aside the question of the constitutionality of N.C.G.S. 15A-1221(b), which has not been raised by the parties, we find that the court did not violate the statute, and the assignment of error is overruled. *State v. McNeil,* 47 N.C. App. 30, 266 S.E. 2d 824, *disc. rev. denied,* 301 N.C. 102 (1980), *cert. denied,* 101 S.Ct. 1356 (1981).

[2]  Defendant makes several arguments concerning the evidence. The witness Lillian Best, defendant's girlfriend, testified that on the day after the robbery defendant had what seemed to her an unusual or large amount of money. On cross-examination the amount was stated to be $274. The witness's testimony was a shorthand statement of fact derived from her own experience. *See State v. Spaulding,* 288 N.C. 397, 219 S.E. 2d 178 (1975), *death penalty vacated,* 428 U.S. 904 (1976); *Edwards v. Junior Order,* 220 N.C. 41, 16 S.E. 2d 466 (1941). Moreover, once the amount was before the jury, the witness's characterization was not prejudicial. The testimony was relevant as a foundation for a series of questions concerning defendant's reaction when confronted with the witness's inquiry about the source of the money. Defendant did not object to these questions or answers at trial. *See* 1

Stansbury's N.C. Evidence §§ 79 and 27 (Brandis rev. 1973). We find no error in this testimony.

[3] State's witness Brown testified that he was involved in the robbery along with defendant and several others. He, defendant and Paul Carter had planned the robbery at an earlier time. Defendant was living in California and flew into Durham the day of the robbery. Defendant objected to Brown testifying that Carter, one of the robbers, told him that he was going to the airport to pick up defendant. This testimony was competent as a statement of a coconspirator made in furtherance of the plan to commit the robbery. "When the State shows a *prima facie* conspiracy, the declarations of the coconspirators in furtherance of the common plan are competent against each of them. . . . *This is so even where the defendants are not formally charged with a criminal conspiracy.*" State v. Covington, 290 N.C. 313, 325-26, 226 S.E. 2d 629, 639 (1976) (citations omitted; emphasis added).

We find no prejudicial error in the testimony of Brown. His testimony concerning the plans to commit a robbery was competent. *State v. Gregory,* 37 N.C. App. 693, 247 S.E. 2d 19 (1978). While the trial judge may not have accurately summarized this testimony in his jury charge, it was immaterial as there was abundant evidence that the robbery was planned in December 1979 and January 1980. Defendant failed to call the mistake to the attention of the court. *State v. Willard,* 293 N.C. 394, 238 S.E. 2d 509 (1977). Brown also testified, over objection, that he was afraid of defendant and that during his incarceration in the Durham County jail he had experienced no difficulty in getting along with the prison personnel. This testimony was competent. Brown was testifying pursuant to an agreement with the state and this testimony was logically related to that agreement. Stansbury, *supra,* § 79. Moreover, defendant has failed to show any prejudice from the testimony. *State v. Atkinson,* 298 N.C. 673, 259 S.E. 2d 858 (1979).

Next, defendant contends the court committed prejudicial error by failing to caution the jury with appropriate instructions concerning their behavior during the trial, in violation of N.C.G.S. 15A-1236(a). The constitutionality of this statute has not been raised. Defendant failed to object at the times he contends the court was remiss in its duty to instruct the jury, nor did he request fur-

ther instructions. Under the holding in *State v. Turner*, 48 N.C. App. 606, 269 S.E. 2d 270 (1980), we find no prejudicial error.

**[4]** Apparently after the noon recess on the second day of the trial, juror O'Neil Reams was absent. The trial judge seated an alternate juror in place of Reams. The following entry is in the record:

> (The trial was recessed at 12:40 p.m., and reconvened at 2:30 p.m.)
>
> COURT: Upon the explained absence of the juror, O'Neil Reams, it is ordered that the alternate, Mr. Bennett, be substituted to take the place of that juror. Mr. Bennett, change your chair, please. Now have Mr. Brown come back. Now proceed.

Defendant did not object to this procedure, did not request additional findings, and did not move for mistrial, either then or at the conclusion of the trial. N.C.G.S. 15A-1215(a) does not require that specific findings be made by the court in seating an alternate juror. The statement by the court is sufficient for an appellate court to determine that the seating of the alternate juror was not an abuse of discretion. After a lunch recess of an hour and fifty minutes,[1] juror Reams failed to return. His absence was explained. At this point, in the absence of a motion by counsel, the trial judge was required to decide whether to enter a mistrial on his own motion or seat an alternate juror. He wisely exercised his discretion and chose to seat the alternate juror. No abuse of discretion is shown. The holding of the Supreme Court in *State v. Nelson* is appropriate:

> Defendants' contention that the excusal constituted prejudicial error requiring a mistrial is without merit. The trial judge has broad discretion in supervising the selection of the jury to the end that both the state and defendant may receive a fair trial. . . . This discretionary power to regulate the composition of the jury continues beyond enpanelment. . . . It is within the trial court's discretion to excuse the juror and substitute an alternate at any time before final sub-

---

1. The recess was protracted as the trial judge was hearing another matter during this time period.

mission of the case to the jury panel. G.S. 15A-1215. These kinds of decisions relating to the competency and service of jurors are not reviewable on appeal absent a showing of abuse of discretion, or some imputed legal error.

298 N.C. 573, 593, 260 S.E. 2d 629, 644 (1979) (citations omitted).

During defendant's cross-examination of the witness Brown, the court interrupted defendant's counsel and directed that he move his examination along. The witness had been asked if he was high on drugs on the date the robbery occurred. Defendant has failed to include the witness's answer in the record and has therefore failed to show prejudice. *State v. Little*, 286 N.C. 185, 209 S.E. 2d 749 (1974). Additionally, defendant had already examined the witness extensively concerning his use of drugs and the testimony indicated that the witness was high on rum and marijuana at the time of the robbery. The trial court's efforts to utilize court time economically will not ordinarily be held reversible error. *State v. Carter*, 233 N.C. 581, 65 S.E. 2d 9 (1951). We find no merit in the assignment of error.

Defendant's contention that the court erred in failing to give defendant's requested charge on circumstantial evidence is controlled by *State v. Hicks*, 229 N.C. 345, 347, 49 S.E. 2d 639, 640 (1948), where the Court held:

> It is a well settled principle in this jurisdiction that the duty imposed upon the trial court by G.S., 1-180, to "declare and explain the law" arising in the case on trial does not require the court to instruct the jury upon the law of circumstantial evidence in a criminal action involving both direct and circumstantial testimony where the State relies principally upon the direct evidence and the direct evidence is sufficient, if believed, to warrant the conviction of the accused.

The state relied principally upon the direct testimony of the witnesses Ferrell, Rudd, and Brown to establish its case. This testimony, if believed, would support the verdict of guilty. Also, defendant's requested written instruction, in the context of this case, was erroneous. On the other hand, the district attorney had the right, as did defendant's counsel, to argue the strengths and weaknesses of the circumstantial evidence offered at trial. N.C.

Gen. Stat. § 84-14 (1981); N.C. Gen. Stat. § 15A-1230(a) (1978). We find no prejudicial error.

Defendant contends the court erred in four respects in its jury instructions. We have examined each with care and find that the court's charge, viewed contextually, contains no prejudicial error. *State v. Tomblin,* 276 N.C. 273, 171 S.E. 2d 901 (1970).

No error.

Judges MARTIN (Robert M.) and BECTON concur.