STATE OF NORTH CAROLINA v. DEXTER LANE ALLMOND

No. 7519SC344

(Filed 3 September 1975)

1. **Homicide § 20— photographs of victim — admissibility for illustration**

    The trial court did not err in allowing into evidence five photographs of deceased for the purpose of illustrating the testimony of an expert medical witness as to the cause of death.

2. **Homicide § 19— evidence of victim's character, threats — no evidence of self-defense**

    The trial court in a second degree murder prosecution did not err in excluding evidence concerning threats made by the victim against defendant, the specific act of violence by the victim against defendant in pointing a gun at his head, the fact that the victim had a gun hidden outside the building at the time of the shooting, and the reputation of the victim as a vicious man, since such evidence was admissible only upon the presentation of viable evidence of the necessity of self-defense, and defendant presented no such evidence.

3. **Homicide § 31— voluntary manslaughter — thirty years' imprisonment — excessive punishment**

    Imposition of a prison sentence of thirty years upon a conviction of voluntary manslaughter was greater than the punishment allowed by statute, and the case is remanded for entry of judgment imposing a sentence within the statutory limit of twenty years.

APPEAL by defendant from *Crissman, Judge.* Judgment entered 6 February 1975 in Superior Court, RANDOLPH County. Heard in the Court of Appeals 27 August 1975.

Defendant was tried upon his plea of not guilty to the charge of murder in the second degree of Dennis Marsh. The State introduced evidence to show that on the night of 21 September 1974 the defendant entered Pinkie's Place in Asheboro carrying a .25 caliber automatic pistol in his right hand. He walked across the dance area and entered the poolroom where Dennis Marsh was playing pool. Defendant pulled the safety back on his pistol and shot Dennis Marsh in the back. Marsh fell to the floor and defendant kept on shooting him. Marsh died of the multiple bullet wounds inflicted by defendant.

Defendant testified and admitted shooting Marsh. He testified that Marsh had previously made threats against his life and at one time had held a gun against his head. Defendant also offered evidence to show that on the night of 21 September 1974, shortly before the fatal shooting, Marsh and defendant were

engaged in conversation outside of Pinkie's Place when defendant saw Marsh reaching to pick up a hidden shotgun, whereupon defendant ran away. On cross-examination, defendant testified: "As to what purpose I went into Pinkie's Grill for, I went in there because I knew if I didn't get him, he was going to get me. I went in there with the idea to shoot Dennis Marsh. After I found out what his idea was, it was either him or me." Defendant also testified on cross-examination that as he walked into the dance area on his way to the poolroom, his sister and another person grabbed him and tried to hold him back, but he broke loose from them so he could "get Dennis Marsh." He admitted that when he shot Marsh, he didn't know if Marsh had a gun, that Marsh did not then try to come toward him but was going toward the door, and that he did not see Marsh with any weapon at that time. Defendant testified that he knew Marsh had a gun out in the bushes. The jury found defendant guilty of voluntary manslaughter. He was sentenced to thirty years in prison. Defendant appealed.

*Attorney General Edmisten by Associate Attorney General George J. Oliver for the State.*

*William H. Heafner; and Bell, Ogburn & Redding by Deane F. Bell for defendant appellant.*

PARKER, Judge.

[1]  Defendant first contends the trial judge erred by not limiting the number of photographs of the deceased introduced into evidence by the State. Five photographs were used to illustrate the testimony of an expert medical witness as to the cause of death. We find no error in the trial judge's ruling. Photographs which are relevant and properly authenticated are admissible in evidence for the purpose of illustrating or explaining the testimony of a witness. *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969). If the photograph is relevant and material, the fact that it is gory or gruesome will not alone render it inadmissible. *State v. Chance,* 279 N.C. 643, 185 S.E. 2d 227 (1971). Here, all of the photographs were relevant, served a useful and proper purpose, and were properly admitted.

[2]  Defendant assigns as error the exclusion of evidence concerning threats made by Marsh against defendant, the specific act of violence by Marsh against defendant in pointing a gun at his head, the fact that Marsh had a gun hidden outside at

the time of the shooting, and the reputation of Marsh as a vicious man. It is true that upon a proper showing that the accused in a homicide case may have acted in self-defense, the jury is entitled to hear and evaluate evidence of uncommunicated threats, *State v. Goode,* 249 N.C. 632, 107 S.E. 2d 70 (1959); communicated threats, *State v. Rice,* 222 N.C. 634, 24 S.E. 2d 483 (1943); specific acts of violence, *State v. Johnson,* 270 N.C. 215, 154 S.E. 2d 48 (1967); and evidence of the general character of the deceased as a violent and dangerous man, *State v. Johnson, supra.* However, as a condition precedent to the admissibility of such evidence, the defendant must first present viable evidence of the necessity of self-defense. "[T]here must be evidence . . . that the party assaulted believed at the time that it was necessary to kill his adversary to prevent death or great bodily harm, before he may seek refuge in the principle of self-defense, and have the jury pass upon the reasonableness of such belief." *State v. Rawley,* 237 N.C. 233, 237, 74 S.E. 2d 620, 623 (1953). Defendant's evidence essentially established that although he had been previously threatened and was perhaps justified in his fear that Marsh might at some time attempt to kill him, he deliberately entered the building for the purpose of shooting Marsh and then proceeded to shoot and kill an unarmed man who was not then immediately attacking him or even in a position to do so. Clearly, at the time of the shooting the deceased was neither actually presenting any threat of imminent harm to the defendant nor did he appear to be doing so. "A defendant, when acting in his proper self-defense, may use such force only as is necessary, or as reasonably appears to him *at the time of the fatal encounter* to be necessary, to save himself from death or great bodily harm." (Emphasis added.) *State v. Fowler,* 250 N.C. 595, 598, 108 S.E. 2d 892, 894 (1959).

Although the excluded evidence was not admissible to show self-defense, some or all of it might have been competent as evidence of passion or heat of blood produced by reasonable provocation, which evidence may reduce a charge of second-degree murder to manslaughter. However, the jury found defendant guilty only of voluntary manslaughter even without the benefit of this excluded evidence. Thus any error in the exclusion of this evidence as it related to the degree of the crime was nonprejudicial.

Defendant also assigns as error the exclusion of testimony concerning the emotional state of defendant's father and the

deceased when they were engaged in conversation on the night of the shooting. Clearly, this testimony was irrelevant to any issue properly in this case and there was no error in the exclusion of this evidence.

[3]   We find no error in defendant's trial. We note, however, that the prison sentence of thirty years imposed on defendant was excessive. The statutory punishment for the crime of voluntary manslaughter is imprisonment for not less than four months nor more than twenty years. G.S. 14-18. Accordingly, the judgment is vacated and this case is remanded to the Superior Court in Randolph County for the purpose of entry of judgment imposing a sentence within statutory limits.

Remanded for judgment.

Chief Judge BROCK and Judge ARNOLD concur.